UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PSYNERGY ENTERPRISE DEVELOPMENTS LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>SOCIETA AGRICOLA I.A.T.C. S.R.L., et al.,<br><br>            Defendants. | Case No.  25-cv-01937-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 9, 16 |

Plaintiff Psynergy Enterprise Developments LLC brings claims for fraud and deceit, breach of written contract, negligence, and conversion against seven Defendants related to the death of Atticus, a horse bred and owned by Psynergy.  Defendants Societa Agricola I.A.T.C. S.r.l. (also sued as Capecci Arabian Training Center), Paolo Capecci, and Susanne Gurschler Capecci (together "Capecci Defendants") move to dismiss the complaint for lack of personal jurisdiction and failure to state a claim.  (Dkt. Nos. 9, 16.)  Because the Court lacks personal jurisdiction over Capecci Defendants for the reasons explained below, the Motion is **GRANTED**.  This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

### A. Dismissal Under Rule 12(b)(2)

At issue is whether Capecci Defendants consented to personal jurisdiction, or whether specific personal jurisdiction is adequately shown.[1]  Psynergy must make out a *prima facie* case

---

[1] The parties agree that the Court does not have general personal jurisdiction over Capecci Defendants.

that personal jurisdiction exists. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (describing the standard of review where "the motion is based on written materials"). In considering whether Psynergy has met its burden, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). On the other hand, conflicts of facts contained in the parties' affidavits must be resolved in favor of the party asserting jurisdiction when deciding whether a *prima facie* case has been made. *Id.* at 1285; *see also Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Through a forum selection clause, a defendant can preemptively waive objections to personal jurisdiction with regard to claims within the scope of a particular agreement. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007). Absent such consent, courts apply a three-prong test to determine if specific personal jurisdiction exists. *See Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023). The first prong of the test asks whether there has been purposeful availment or purposeful direction by a defendant towards the forum state. *Id.* As discussed below, Psynergy has not made out a *prima facie* case for consent, purposeful availment, or purposeful direction. Therefore, it is not necessary to reach the remaining prongs of the test to determine that specific personal jurisdiction over Capecci Defendants is lacking. *Id.* at 1166. For the same reason, the Court does not reach the *forum non conveniens* doctrine or the Capecci Defendants' arguments under Rule 12(b)(6).

***Consent or Purposeful Availment***. Psynergy argues that Capecci Defendants have consented to jurisdiction and have purposefully availed themselves of the privileges of this forum because they executed an agreement with Psynergy relating to Atticus. (Dkt. No. 15-1 at 31–35 ("Agreement").)[2] The Agreement does not establish a *prima facie* case for personal jurisdiction.

First, there has not been consent. The Agreement itself contains no choice of forum

---

[2] All citations to page numbers refer to ECF pagination.

provision.  (*See generally id*.)  Furthermore, the record evidence Psynergy submits does not contain any facts supporting the existence of a separate verbal or written agreement by Capecci Defendants to litigate disputes in California.  (*See*, *e.g.*, Dkt. No. 15-2; Dkt. No. 20-1.)  Michael Weinstein, Psynergy's managing partner, states that Gurschler Capecci "agreed that jurisdiction and venue" would lie in in this district, but the referenced Agreement does not contain any language to this effect.  (*Compare* Dkt. No. 15-2 ¶ 11 *with* Dkt. No. 15-1 at 31–35.)

Psynergy also does not make out a *prima facia* case as to purposeful availment.  The Agreement appears to be signed by Defendant Gurschler Capecci,[3] and states that Psynergy "intends to entrust a horse . . . to [I.A.T.C.] for breeding, or preparation and training of the horse in order to participate in sports or other cultural events within Italy as well as abroad."  (Dkt. No. 15-1 at 32.)  Weinstein asserts that he was instructed by Noëmie Zeller (a Defendant who has not appeared in this action) to sign the contract on behalf of Psynergy.  (Dkt. No. 20-1 ¶ 1.)  Weinstein was told by Zeller that the contract had already been "approved and finalized" by Capecci Defendants.  (*Id*.)  Weinstein executed the contract in California in 2023, but does not assert that any of the Capecci Defendants were physically present in California to negotiate or execute the contract.  (*Id.*; *see also* Dkt. No. 15-2 ¶ 11.)  Likewise, Weinstein does not assert that the Capecci Defendants affirmatively advertised to or sought out Psynergy's business in California.  Gurschler Capecci asserts that neither she nor Paolo Capecci have traveled to California in the past 10 years.  (Dkt. No. 18-2 ¶ 6.)

Psynergy's record evidence does not indicate that Capecci Defendants "deliberately reached out beyond their home—by, for example, exploiting a market in the forum State or entering a contractual relationship *centered* there."  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (cleaned up and emphasis added); *see also Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1024–25 (N.D. Cal. 2015).  While purposeful availment

---

[3] There is a factual dispute regarding whether a final agreement between the parties was ever reached.  This dispute must be resolved in Psynergy's favor at this stage of the proceedings.  *Data Disc, Inc.*, 557 F.2d at 1285.

"can be established by a contract's negotiations, its terms, its contemplated future consequences, and the parties' actual course of dealing," *Davis*, 71 F.4th at 1164–66 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)), the necessary factors are not present here.  As already discussed, Psynergy introduces no evidence that Capecci Defendants negotiated or executed the contract while in California, or that the contract incorporated California law.  With respect to performance, Psynergy's record evidence indicates that the contract was to be performed entirely outside of California: Atticus was to be moved from Arizona to Italy, where he was to be stabled.  Psynergy has not shown purposeful availment.  *See id.*; *see also*, *e.g.*, *Selhorst v. Alward Fisheries, LLC*, No. 11-cv-3266-EMC, 2011 WL 4974568, at *6 (N.D. Cal. Oct. 19, 2011) (dismissing for lack of personal jurisdiction where "no part of the contract was performed in California, and any payments sent to California would be dependent on [the] work in Alaska").

   *Purposeful Direction*.  Psynergy also argues that Capecci Defendants satisfy the purposeful direction test because they (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) which causes harm that Capecci Defendants knew would be suffered in the forum state.  *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  The purposeful direction "analysis is driven by the defendant's contacts with the forum state—not the plaintiff's or other parties' forum connections."  *Davis*, 71 F.4th at 1163 (citing, *inter alia*, *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

   Here, as already discussed, Capecci Defendants' alleged contractual obligation were to be performed in Italy, and their alleged mistreatment of Atticus occurred in Italy.  Therefore, any alleged intentional acts related to the contract and Atticus's care were not "expressly aimed" at California.  With respect to the fraud claim, the Complaint and record contain only one statement attributed to the Capecci Defendants: "On or about August 27, 2023, Michael Weinstein asked Noëmie Zeller for an update how Atticus was doing.  Noëmie Zeller replied that she asked Susanne Gurschler Capecci[, who] reported that Atticus is gaining some weight and doing very well."  (Dkt. No. 1 ¶ 24; *see also* Dkt. No. 15-2 ¶ 13.)  But this communication is insufficient to make out a *prima facie* case for purposeful direction.  The statement was made by Gurschler

4

Capecci to Zeller, and no factual allegations support that Gurschler Capecci intended to direct the statement at Psynergy in California. Moreover, the statement does not meet the third prong of the purposeful direction test: the statement is not alleged to have caused harm to Plaintiffs, because there are no factual allegations indicating it was false at the time it was made in August 2023. Psynergy admits that a veterinarian had likewise found Atticus "healthy and sound" for insurance purposes only 19 days before the statement was made. (Dkt. No. 15-2 ¶ 12.) The first time that Atticus is alleged to have been found unhealthy was ten months later in June 2024. (Dkt. No. 1 ¶ 31.) In sum, there are simply no allegations of conduct creating the "necessary connection" between Capecci Defendants and California. *Id.*

Psynergy argues that Zeller's alleged acts should be imputed on the Capecci Defendants to satisfy the purposeful direction test, on an agency theory. Assuming for the sake of argument that analysis of Zeller's conduct would lead to a different result, Psynergy provides no factual support for the existence of an actual or apparent agency relationship between Zeller and Capecci Defendants.

First, the allegations of actual agency relationship are unsupported by Psynergy's record evidence, and are contradicted by Capecci Defendants' affidavit testimony and record evidence. The record shows that the Capecci Defendants had a contractual agreement to provide services for horses that Zeller's company would bring to their farm in Italy, not that Zeller acted as an agent for the Capecci Defendants with authority to make binding promises on their behalf about the care of those horses. (*See* Dkt. No. 19-3 ¶¶ 4–7; Dkt. No. 19-4.)[4]

There is also no factual dispute as to an apparent agency relationship. Weinstein's affidavit contains a conclusory legal assertion that it "was always my understanding that [Zeller] was a [ostensible or apparent] fiduciary agent, principal member, manager, operator,

---

[4] Psynergy objects to the Capecci Defendants' submission of additional evidence on reply. (Dkt. No. 20.) However, that evidence was properly submitted in response to Psynergy's submission of evidence asserting that Zeller acted as the Capecci Defendants' agent, and is thus appropriately before the Court. Psynergy submitted a further responsive declaration, which has been considered as well. (Dkt. No. 20-1.)

5

collaborator, agent, caregiver, trainer, breeder, handler, broker, partner, and conduit, of IATC." (Dkt. No. 20-1 ¶ 2 (second set of brackets in original).)  But "apparent authority is created, and its scope defined, by the acts of the princip[al] in placing the agent in such a position that he appears to have the authority which he claims or exercises." *Kremen v. Cohen*, No. 98-cv-20718-JW, 2000 WL 1811403, at *3 n. 7 (N.D. Cal. Nov. 27, 2000) (quoting *Blanton v. Womancare, Inc.*, 696 P.2d 645, 651 (Cal. 1985)).  The only acts by Capecci Defendants in the record that would support Zeller's apparent authority are that they permitted Zeller to forward to Psynergy, for signature, a contract that Capecci Defendants had already "approved and finalized."  (Dkt. No. 20-1 ¶ 1.)  This exchange is insufficient to make out a *prima facie* case that Zeller had apparent authority to act as Capecci Defendants' agent with respect to making promises about Atticus's care or any other contractual duty to Psynergy.

*Conclusion*.  The Motion to Dismiss for lack of personal jurisdiction is **GRANTED**. The complaint is dismissed, without prejudice, for lack of personal jurisdiction as to the Capecci Defendants.  By **January 29, 2026**, Psynergy shall file either a status report regarding service on the remaining Defendants or proof of service of summons as to those Defendants.

**IT IS SO ORDERED.**

Dated: January 15, 2026

RITA F. LIN
United States District Judge